IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| DARRYL THOMPSON, | ) Civil Action No. 3:03-3406-JFA-JRM |
| Plaintiff, | ) |
| vs. | ) |
| SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff, Darryl Thompson ("Thompson") filed this action on October 27, 2003. He alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII")[1] for hostile work environment and retaliation. Defendant, the South Carolina Department of Corrections ("SCDC"), filed a motion for summary judgment on December 20, 2004. Thompson filed a memorandum in opposition to summary judgment on January 18, 2005. On January 26, 2005, SCDC filed a reply.

SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber,

citing <u>Celotex Corp.</u>, <u>supra</u>.  Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." <u>Mitchell v. Data General Corporation</u>, 12 F.3d 1310, 1316 (4th Cir. 1993) and <u>DeLeon v. St. Joseph Hospital, Inc.</u>, 871 F.2d 1229, 1233 (4th Cir. 1989), n.7.  Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment.  <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547 (5th Cir. 1987) and <u>Evans v. Technologies Applications & Services Co.</u>, 80 F.3d 954 (4th Cir. 1996).

### <u>FACTS IN THE LIGHT MOST FAVORABLE TO PLAINTIFF</u>

1. Thompson, an African-American male, began working for SCDC in August 1990.  In 1997, he was terminated and later rehired.  When he was rehired, he assumed his duties as a Correctional Officer ("C/O").  Thompson Aff.

2. In June 1998, Thompson received a written warning and thirty days probation from Warden Willie Weldon for excessive use of his sick leave.  Defendant's Motion for Summary Judgment, Exs. 8 and 9.

3. At the time of the alleged incidents, Thompson was a C/O working at the Lieber Correctional Institution ("LCI") of the SCDC.

4. In 2001, Captain William Dodson ("Dodson"), a Caucasian male, became Thompson's supervising Captain.  Thompson Aff.

5. In June 2001, Plaintiff was in charge of the exercise yard.  He told a group of inmates that they had missed the "window" of time for joining a softball game.  Dodson intervened and said he would check on what time the inmates arrived.  Thompson objected to Dodson about being overruled, stating that the exercise yard position was under the authority of

3

      Major Thompson. Captain Dodson leaned toward Plaintiff and said "No, nigger, you do what I say." Thompson Aff.

6. Thompson states that he was so upset and shocked that he was unable to make any response. He walked away, left his post, gave his radio to another officer, and was unable to finish out the end of his shift. Thompson was not disciplined for leaving his post before being relieved. Thompson Aff.

7. Sometime after this incident,[2] SCDC announced that Edsel Taylor, a white male, would serve as interim Warden at LCI. Dodson had previously issued a disciplinary action against Plaintiff concerning his use of sick leave time. Thompson challenged the action and Warden Weldon, an African-American male, overruled Dodson's disciplinary action. After learning of the change in administration, Dodson approached Thompson on the ward and told him that he intended to re-open the disciplinary matter stating "that last nigger didn't have any balls" and "Warden Taylor is hearing the next one." Thompson Aff.

8. Subsequent to a meeting of Thompson, Dodson, and LCI Warden Taylor on August 8, 2001, Captain Dodson wrote a memorandum to Thompson concerning verification of sick leave. Dodson stated that because of Thompson's questionable use of sick leave for the period of June 8 through June 25, 2001, Thompson would be required to submit a doctor's excuse for any sick days used for the period of August 8, 2001 until January 1, 2002. Defendant's Motion for Summary Judgment, Ex. 11.

---

[2]Thompson has not provided the dates on which a majority of the alleged actions occurred. Although he does not provide a date for this incident in his affidavit, Thompson asserts in his memorandum that this incident occurred in September 2001. Plaintiff's Opposition Memorandum at 13.

4

9.  In October 2001, Stanley Burtt, a white male, became Warden of LCI. See Burtt Aff.

10. On November 21, 2001, Thompson made a complaint to Robin Gracien ("Gracien"), Chief, Employee Relations Branch Division of Human Resources for SCDC. Thompson submitted a detailed handwritten complaint in which he complained that he was discriminated against based on race and subjected to retaliatory actions. He primarily complains that, after disagreements with Dodson over policies on how to handle inmates and work issues at SCDC, Dodson told Thompson that he would be required to submit a doctor's excuse for any use of sick leave (rather than for periods of sick leave over three days as required for most SCDC employees). Plaintiff's Opposition Memorandum, Exs. 1 and 2.

11. On December 14, 2001, Thompson was charged with the refusal to carry out oral or written directions of a supervisor and excessive use and/or abuse of sick leave. Dodson was the charging party. On January 14, 2002, Thompson received a written warning and ninety days probation for these infractions. Defendant's Motion for Summary Judgment, Ex. 10.

12. In July 2003, Thompson received a written warning and thirty days probation for violation of written rules, regulations, or policies from March 21 to June 26, 2003; excessive use/abuse of sick leave; and unauthorized absence. Dodson was not the charging party. Defendant's Motion for Summary Judgment, Ex. 12.

13. In August 2003, Thompson received a written warning, thirty days probation, and an eight-hour suspension for a violation of written rules, regulations, and policy and

   unauthorized absence from work. Dodson was not the charging party. Defendant's Motion for Summary Judgment, Ex. 13.

14. In November 2003, Thompson received ninety days probation and a twenty-four hour suspension for violation of written rules, regulations, or policies from August 14 to October 16, 2003. Dodson was not the charging party. Defendant's Motion for Summary Judgment, Ex. 14.

15. In approximately December 2002, Thompson filed a Charge of Discrimination with the South Carolina Human Affairs Commission ("SCHAC") and the Equal Employment Opportunity Commission ("EEOC"). He asserted claims of hostile work environment and retaliation. A right to sue notice was issued to Thompson in July 2003. Defendant's Motion for Summary Judgment, Exs. 15 and 16.

16. On September 13, 2004 (after this action was filed, but before it was served), Thompson was terminated from his employment with SCDC. Thompson Aff.[3]

## DISCUSSION

 SCDC argues that it is entitled to summary judgment because: (1) Thompson cannot show that he was subjected to racial harassment sufficiently severe or pervasive to support a prima facie case; (2) Thompson cannot establish a prima facie case of retaliation; and (3) even if Thompson could establish a prima facie case of retaliation, SCDC has articulated legitimate, non-retaliatory reason for its actions which he fails to show are pretextual.

---

[3]Thompson has not alleged a claim for wrongful termination or retaliatory termination.

### A. Racial Harassment/Hostile Work Environment

Thompson alleges that he was racially harassed by his supervisor, Captain Dodson. To prevail on a Title VII hostile environment claim based on race, a plaintiff is required to present evidence establishing that "(1) the subject conduct was unwelcome; (2) it was based on the [race] of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Spicer v. Virginia Dep't of Corrections, 66 F.3d 705, 710 (4th Cir.1995) (en banc); see also Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004).

SCDC argues that Thompson fails to establish a hostile environment claim because he fails to show that the two alleged incidents were "severe or pervasive."[4] Thompson argues that the use of the term "nigger" by his supervisor on two occasions was severe and pervasive. He claims that the use of the racial slur affected him so severely that it interfered with the ability to perform his duties, as evidenced by the fact that he abandoned his job on the date of the first incident, unable to finish out the day. He also states that he sought medical treatment for emotional distress from the harassment. Plaintiff's Opposition Memorandum, Ex. 4; Thompson Aff.

In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment in violation of Title VII, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile

---

[4] SCDC does not appear to dispute the other elements of Thompson's prima facie case (that the alleged conduct was unwelcome, based on race, and imputable to it).

7

or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787 (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22(1993)).  Among the circumstances examined are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. at 21.

In the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Dodson's comments created a hostile work environment.  The Fourth Circuit has stated that:

> Far more than a "mere offensive utterance," the word "nigger" is pure anathema to African-Americans.  "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates."

Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001), citing Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir. 1993); see also White v. BFI Waste Services, LLC, 375 F.3d 288 (4th Cir. 2004). The comments were made by Thompson's supervisor, they were directed at him (or concerning a personnel decision involving him), Thompson states that the racial slur upset him so much the one day that he left his post early, and he claims he sought medical treatment as a result of the comments.  Thus, it is recommended that Defendant's motion for summary judgment be denied as to this claim.

    B.    <u>Retaliation</u>

Thompson alleges that in retaliation for reporting discriminatory employment practices, SCDC subjected him to a retaliatory hostile work environment, took unwarranted discipline against him which resulted in a loss of pay, altered the terms and conditions of his

employment, and subjected him to an order to change shifts. Complaint, Para. 38. SCDC, in its motion for summary judgment, argues that Thompson cannot establish a prima facie case of retaliation because: (1) alleged retaliatory actions that occurred prior to December 2002 (date that Thompson filed his Charge with SCHAC and the EEOC) are not actionable; (2) he fails to establish a causal connection between that protected activity and corrective actions that occurred in July, August, and October 2003, because these activities occurred at least seven months later; (3) any claims concerning a shift change do not constitute an adverse employment action; and (4) Thompson cannot establish a retaliatory hostile work environment claim because he cannot establish that a hostile work environment occurred. In his memorandum in opposition to summary judgment, Thompson argues that his complaint to Gracien in November 2001 constituted protected activity. He claims that the adverse actions were that: (1) Dodson designated Thompson's sick days as unpaid leave, (2) Dodson assigned Thompson to the maximum security area, (3) Dodson assigned Thompson twelve-hour shifts in the exercise yard without breaks, (4) Dodson submitted inaccurate time sheets for Thompson, (5) Dodson failed to respond to complaints after inmate assaults, and (6) Dodson altered Thompson's evaluation from a positive rating to a negative one. Plaintiff's Opposition Memorandum at 21. In its reply, SCDC argues that Thompson fails to show that the alleged actions constituted adverse employment actions.

To establish a prima facie case of retaliation, it must be demonstrated that:

1)	the employee engaged in protected activity;

2)	the employer took some adverse employment action against the employee; and

3)	a causal connection existed between the protected activity and the adverse action.

See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).[5]

    (1)    Adverse Employment Action

In its motion for summary judgment, SCDC argues that Thompson cannot show that any shift change was an adverse employment action. Thompson argues that SCDC did not challenge any of the alleged adverse actions discussed above. In its reply memorandum,

---

[5]Thompson argues that the McDonnell Douglas framework is no longer an appropriate tool to be used in evaluating a retaliation claim under Title VII based on the United State Supreme Court's opinion in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). In Desert Palace, the Supreme Court held that a plaintiff proceeding under a mixed-motive theory was not required to establish his or her prima facie case by direct evidence (as required previously by some courts). See Desert Palace, 539 U.S. at 2155. Shortly thereafter, the Fourth Circuit recognized that Desert Palace removed the burden of proving a mixed-motive case by direct evidence and held that "[r]egardless of the type of evidence offered by a plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 286 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000)).

    Thompson has not alleged a mixed-motive claim in his Complaint. Further, he has not demonstrated that his race was a "motivating factor" in the alleged retaliatory actions such as to state a mixed-motive claim. See Love Lane v. Martin, 355 F.3d 766 (4th Cir. 2004). To establish a claim of discrimination under a mixed-motive analysis, a plaintiff must demonstrate through direct or circumstantial evidence that "race, color, religion, sex, or national origin was a motivating factor for any employment action." 42 U.S.C. § 2000e-2(m). The plaintiff "need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail so long as it was a motivating factor." See Hill, 354 F.3d at 284.

SCDC appears to argue that the other alleged retaliatory actions are not adverse employment actions.

The Fourth Circuit, in <u>Von Gunten v. Maryland</u>, 243 F.3d 858 (4th Cir. 2001), clarified what an "adverse employment action" is for purposes of a Title VII retaliation claim. Although "ultimate employment actions" are adverse employment actions, a Title VII retaliation claim does not require an ultimate employment action, but does require an action that alters the terms, conditions, or benefits of employment. <u>Von Gunten</u>, 243 F.3d at 865-866. An objective test of "adversity" applies, and a plaintiff's subjective feelings about the employment action is a necessary, but not a sufficient, evidentiary showing to withstand summary judgment. See <u>Goldberg v. B. Green and Co., Inc.</u>, 836 F.2d 845, 848 (4th Cir.1988).

In the light most favorable to Thompson, he has alleged a number of retaliatory actions that are adverse employment actions. Thompson claims that the change in his performance evaluation affected his salary and Dodson changed some of his sick days into unpaid leave. SCDC argues that Dodson's assignment of Thompson to the maximum security area was not an adverse employment action because Thompson testified that he never actually was sent to maximum security. The language cited,[6] however, does not support this assertion, as Thompson stated that "he [Dodson] sent me [to maximum security]." Defendant's Reply, at 4. Further, Thompson stated in his affidavit that Dodson assigned him to the maximum security facility more than he was supposed to be there and it was the least desirable and most dangerous position because officers had to deal with very violent inmates. Thompson Aff. There is also a question of fact as to

---

[6]SCDC has quoted Thompson's deposition testimony in its reply, but has not submitted the portions of the referenced transcript.

11

whether Dodson allowed Thompson, a diabetic, to take a break to eat during his twelve-hour shift. See Thompson Aff. Thompson also claims that the combined effect of the alleged adverse employment actions constituted retaliatory harassment.[7] Thus, there appear to be genuine issues of material fact as to whether the alleged retaliatory actions were adverse employment actions.

(2)     Protected Activity/Causal Connection

In its motion for summary judgment, SCDC argues that Thompson fails to establish a causal connection as to certain activities because they arose before Thompson engaged in the protected activity of filing a Charge with SCHAC and the EEOC. Thompson argues that his complaint to Gracien in November 2001 is a protected activity.

A plaintiff need not have filed a formal complaint with the EEOC or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity. Warren v. Halstead Industries, Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985). Thus, retaliatory activity that occurred after Thompson complained to Gracien in November 2001 may be actionable.[8]

---

[7] "Retaliatory harassment can constitute adverse employment action,[] but only if such harassment adversely affects the 'terms, conditions, or benefits of [the employee's] employment.'" Von Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001)(internal citations omitted).

[8] Thompson's allegation that Dodson lowered his performance rating may have occurred prior to the first of Thompson's protected activities. Thompson's complaint to Gracien included an allegation concerning the lowering of his evaluation. See Plaintiff's Opposition Memorandum, Ex. 1 at 5 ("On Nov-8-01, Sgt Ball did my evaluating [sic] on my work performance. Sgt Bell stated that she gave me an exceed [rating] but Sgt Bell stated that Capt Dodson took the exceed
(continued...)

(3) <u>Legitimate, Non-Discriminatory Reason/Pretext</u>

Although SCDC argues that it has articulated a legitimate, non-discriminatory reason for the handling of Thompson's sick leave, it has not addressed the other alleged retaliatory actions. Thus, it is recommended that summary judgment be denied as to Thompson's claims of retaliation.

## CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 12) be denied.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

June 3, 2005
Columbia, South Carolina

---

[8](…continued)
away by use [sic] whiteout, then he gave me a low meets rating.").